**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CHAMPIONX, LLC,<br>　　Petitioner,<br><br>VS.<br><br>HUNG ANH NGUYEN,<br>　　Respondent. | CIVIL ACTION NO. 4:22-mc-00007<br><br>Action Pending in<br>EASTERN DISTRICT OF<br>LOUISIANA<br><br>CIVIL ACTION NO. 19-cv-02092 |

**CHAMPIONX LLC'S MOTION TO QUASH OR FOR A PROTECTIVE ORDER AND
<u>MOTION TO STAY DEPOSITION</u>**

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) ............................................................................................. 7, 8

*In re Guzman*,
  No. 2:16-CV-00303, 2017 WL 2210519 (W.D. Tex. May 19, 2017) ...................................... 12

*Hallamore Corp. v. Capco Steel Corp.*,
  259 F.R.D. 76 (D. Del. 2009) .................................................................................................. 12

*Huber v. Texas Woman's Univ.*,
  Civ. A. No. H-06-00303, 2006 WL 8446878 (S.D. Tex. June 16, 2006) ........................... 13, 14

*Hume v. Consol. Grain & Barge, Inc.*,
  No. CV 15-935, 2016 WL 7385699 (E.D. La. Dec. 21, 2016) ................................................ 14

*Hung Anh Nguyen v. BP Exploration & Production Inc., et al*,
  No. 2:19-cv-02092 ..................................................................................................................... 1

*Kevin Hinton v. BP Exploration & Production Inc.*,
  Case No. 4:19-cv-02601 (S.D. Tex. June 2, 2020), Dkt. 31 .................................................... 13

*Madison v. Courtney*,
  No. 4:18-cv-00671-O, 2018 WL 10579557 (N.D. Tex. Aug. 17, 2018) ................................. 14

*Medical Components Inc. v. Classic Med. Inc.*,
  210 F.R.D. 175 (M.D.N.C. 2002) .............................................................................................. 7

*MetroPCS v. Thomas*,
  327 F.R.D. 600 (N.D. Tex. 2018) ........................................................................................ 7, 14

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005) ............................................................................................... 8

*In re O'Hare*,
  2012 WL 1377891 (S.D. Tex. Apr. 19, 2012) ....................................................................... 8, 12

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  295 F.R.D. 112 (E.D. La. 2013) ................................................................................................. 2

*In re Oil Spill by Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*,
  No. MDL 2179, 2012 WL 5960192 (E.D. La. Nov. 28, 2012) ........................................... 2, 10

*In Re: Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*,
    Case No. 2:10-md-2179 (E.D. La. May 3, 2012), Dkt. 6427-1 ............................................2, 3

*Peterson v. Sam's E., Inc.*,
    No. EP-07-CV-258-PRM, 2008 WL 11334108 (W.D. Tex. Jan. 15, 2008) ..............................8

*Rembrandt Patent Innovations v. Apple, Inc.*,
    No. 1:15-CV-438-RP, 2015 WL 4393581 (W.D. Tex. July 15, 2015) ................................7, 11

*Terwillegar v. Offshore Energy Servs., Inc.*,
    No. 07-01376, 2008 WL 2277879 (E.D. La. May 29, 2008) .......................................................8

*Texas Brine Co., LLC v. Dow Chem. Co.*,
    No. CV 15-1102, 2018 WL 950352 (E.D. La. Feb. 20, 2018) .................................................12

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) ......................................................................................................8

**RULES**

Fed. R. Civ. P. 26(c) ...............................................................................................................13, 14

Fed. R. Civ. P. 37(d)(2) ..................................................................................................................14

Fed. R. Civ. P. 45 ......................................................................................................................7, 8

Fed. R. Civ. P. 45(d)(1) ...................................................................................................................7

Fed. R. Civ. P. 45(d)(3)(A)(iv) .......................................................................................................7

**OTHER AUTHORITIES**

American Academy of Ophtalmology, *What Is a Pinguecula and a Pterygium (Surfer's Eye)?*
    (https://www.aao.org/eye-health/diseases/pinguecula-pterygium) (Nov. 22, 2021) .................4

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, ChampionX, LLC ("ChampionX") respectfully moves this Court to quash Hung Anh Nguyen's ("Plaintiff") Subpoena for Testimony and Documents ("Subpoena") served on January 4, 2022 in connection with the litigation captioned *Hung Anh Nguyen v. BP Exploration & Production Inc., et al*, No. 2:19-cv-02092, currently pending in the Eastern District of Louisiana (the "Underlying Case"), and/or alternatively enter a protective order to prevent the requested discovery. ChampionX also moves this Court to stay the Rule 30(b)(6) Deposition of ChampionX's corporate representative, pending the resolution of this motion.[1]

## I. INTRODUCTION

The Underlying Case arises out of the April 20, 2010 Deepwater Horizon oil spill (the "Spill"). ChampionX, LLC (formerly known as Nalco Company, LLC ("Nalco")) was the business that supplied Corexit EC9500A and EC9527A (collectively "Corexit") for use in the response to the Spill. At the direction of the President of the United States, Nalco manufactured Corexit, the dispersants that were successfully used during the response to the Spill (the "Spill Response"). In the months following the Spill, hundreds of putative class action lawsuits were filed against BP[2], Transocean, Halliburton and numerous other companies involved in the Deepwater Horizon oil rig and/or the Spill Response. A number of those lawsuits also named Nalco as a defendant and asserted tort claims for alleged bodily injury resulting from exposure to Corexit. As set forth below, over nine years ago, on November 28, 2012 all such claims were dismissed with prejudice against Nalco.

---

[1] ChampionX files its motion in this Court as it is in the district where compliance is required in the Subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)-(B).

[2] For purposes of this motion, "BP" refers to BP Exploration & Production, Inc. and BP America Production Company, Inc., which are the defendants in Plaintiff's Underlying Case ("Defendants").

1

On August 10, 2010, the Judicial Panel on Multidistrict Litigation consolidated cases involving Deepwater Horizon claims in a multidistrict litigation proceeding ("MDL") before Judge Barbier in the U.S. District Court for the Eastern District of Louisiana. During discovery that focused on Nalco's defense that the plaintiffs' claims were preempted by the Clean Water Act and National Contingency Plan ("NCP")—which provide the federal government with ultimate authority over whether to use dispersants, which dispersants to use, where to apply them and in what quantity—Nalco responded to written discovery and produced a corporate designee witness. *See* Declaration of Johanna Spellman (hereinafter "Spellman Dec.") at ¶ 2; *see also* Ex. A, *In re Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico*, No. MDL 2179, 2012 WL 5960192, at *2, *19 (E.D. La. Nov. 28, 2012).[3] On May 18, 2012, Nalco filed a motion for summary judgment arguing that the claims against it were preempted. On November 28, 2012, Judge Barbier agreed and granted Nalco's motion and dismissed all claims against it with prejudice. *See* Ex. A, *In re Oil Spill*, 2012 WL 5960192.

On January 11, 2013, Judge Barbier approved BP's class action settlement of medical benefits claims. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 161 (E.D. La. 2013). Pursuant to the Medical Benefits Class Action Settlement Agreement ("MSA"), settlement class members like Plaintiff who claim they suffer from medical conditions that were diagnosed after April 16, 2012, and that were caused by exposure to oil, dispersants or other substances released from the well or used during the Spill Response, may pursue compensation for their alleged medical conditions through a Back End Litigation Option Lawsuit ("BELO Lawsuit"). *See In Re: Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*,

---

[3] Plaintiff's counsel has already been provided with a copy of that deposition transcript.

No. MDL 2179 (E.D. La. May 3, 2012), Dkt. 6427-1 ("MSA") at §§ II.VV & VIII.[4] The MSA makes clear that BELO plaintiffs can only sue BP. *See* Ex. B, MSA § VIII(A); Ex. C, BELO Cases Initial Proceedings Case Management Order at 3.

The MSA specifies only six narrow issues that may be litigated in BELO Lawsuits: (1) the "fact of diagnosis"; (2) the "amount and location" of oil, dispersants, and other substances; (3) the "level and duration" of the class member's exposure; (4) whether the class member's alleged medical condition "was legally caused" by any exposure; (5) whether any "alternative causes" exist for the class member's alleged medical conditions, and (6) the "amount, if any, of compensatory damages" to which a class member may be entitled. Ex. B, MSA § VIII(G)(3)(a)(iv)–(v) (listing issues that may be litigated). The MSA further ***prohibits*** the litigation of certain issues in BELO lawsuits. These are: (1) the fact and/or existence of the MSA; (2) the alleged fault of BP for the Deepwater Horizon incident; and (3) exposure of the plaintiff to oil, other hydrocarbons, and other substances released from the subject well and its appurtenances, and/or dispersants and/or decontaminants used in connection with response activities. *Id.* at MSA § VIII(G)(3)(b)(i)-(iii). The MSA also expressly limits pretrial discovery, stating that it "may be had only as to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to any issue that may be litigated at trial" (*i.e.*, the limited, enumerated BELO issues). *Id.* at MSA § VIII(G)(5).

On March 6, 2019, Plaintiff filed the Underlying Case against BP alleging that while employed as a clean-up worker during the Spill Response, he was exposed to oil, dispersants and other substances, which, in turn, supposedly caused him to develop pterygium (defined as a

---

[4] The MSA provisions governing the scope of BELO Lawsuits were filed as an Exhibit to the BELO Cases Initial Proceedings Case Management Order in the Underlying Case. *See* Ex. B.

3

noncancerous growth in the eye)[5], dizziness and shortness of breath.  Ex. D, Compl. ¶¶ 24-27.  Plaintiff's complaint makes clear it is a BELO complaint and thus the scope of the case and of discovery are subject to the restrictions in the MSA.  *See*, *e.g. id.* ¶ 3 ("This is a Back-End Litigation Option lawsuit ('BELO') for Later Manifested Physical Conditions ('LMPC') filed pursuant to the terms and requirements of the MSA.").  Consistent with the restrictions in the MSA, BP Exploration & Production, Inc. and BP America Production Company, Inc. are the only defendants in the case.  *See* Ex. B, MSA § VIII(A) .

In April 2021, counsel for Plaintiff contacted Nalco's counsel from the MDL proceeding with draft Rule 30(b)(6) deposition topics and document requests.  Nalco is now known as ChampionX.  Nalco's MDL counsel represents ChampionX, and subsequently conferred telephonically with counsel for Plaintiff on May 6, 2021, June 4, 2021, and June 18, 2021 regarding the proposed subpoena.  *See* Spellman Dec. at ¶ 3.  Counsel for ChampionX noted that the proposed deposition topics were overbroad and unduly burdensome and sought information not relevant to Plaintiff's BELO case.  Counsel for ChampionX also noted that BP had already produced to Plaintiff Nalco's Rule 30(b)(6) deposition transcript of Dr. Manian Ramesh, the Chief Technology Officer of Nalco, taken on January 30, 2012, in the MDL.  *See* Ex. E, No. MDL 2179 ("Defendant Nalco Company's Response And Objections To Plaintiffs' Notice Of 30(B)(6) Deposition") (E.D. La. Jan. 26, 2012).

Nonetheless, in the spirit of cooperation, and in lieu of a deposition and overbroad document production, ChampionX offered to produce published studies on the Corexit products that were used during the Spill Response, which Nalco had produced in the MDL.  Plaintiff

---

[5] American Academy of Ophtalmology, *What Is a Pinguecula and a Pterygium (Surfer's Eye)?* (https://www.aao.org/eye-health/diseases/pinguecula-pterygium) (Nov. 22, 2021).

4

rejected ChampionX's offer and on December 8, 2021, served the Subpoena on Nalco. On January 4, 2022, after being informed of the spin-off to ChampionX, Plaintiff re-sent the Subpoena addressed to ChampionX.[6] The Subpoena commands ChampionX to prepare a corporate representative to testify pursuant to Rule 30(b)(6) on 23 topics. *See* Ex. F at 3; (Hung Nguyen's Subpoena To Testify At A Deposition In A Civil Action). The Subpoena also commands ChampionX to produce fourteen categories of documents. *See id.*

The deposition topics are extremely broad and are unrelated to the limited, enumerated issues that are permitted to be litigated in Plaintiff's BELO case and are beyond the scope of discovery permissible in BELO cases under the MSA. *See* Ex. B, MSA § VIII(G)(3)(b)(i)-(iii); *id.* at § VIII(G)(5); Ex. C, BELO Cases Initial Proceedings Case Management Order at 3. For example, the Subpoena seeks testimony on Nalco's knowledge and conduct, when Nalco and ChampionX are not defendants in this BELO action (nor could they be):

- *Nalco's* "position and opinion on the cytotoxic and genotoxic potential of all Corexit formulations used during the Deepwater Horizon Oil Spill Clean-Up Efforts." (Ex. F, Area of Inq. 13);

- "The identity of all persons directly responsible for ensuring *Nalco's* compliance" with regulatory guidelines regarding Corexit. (*Id.* at Area of Inq. 16);

- *Nalco's* "[k]nowledge of changes to the composition or fractional composition of Corexit." (*Id.* at Area of Inq. 17);

- "All training provided to *Nalco* employees and contractors, regarding the use of Corexit dispersant during the Deepwater Horizon Oil Spill." (*Id.* at Area of Inq. 22); and

- Corexit studies and testing, "conducted by *Nalco* and known by *Nalco*" and actions taken in response to the studies. (*Id.* at Area of Inq. 12).

---

[6] The Areas of Inquiry and document requests in the re-issued January 4, 2022 Subpoena defines "Nalco" to include Nalco and ChampionX.

5

The Subpoena also seeks testimony that is more appropriately sought from Defendants in the Underlying Case or from a publically available source:

- "***Public*** statements issued by Nalco, including those made to the media," regarding the Deepwater Horizon Oil Spill Clean-Up Efforts." (*Id.* at Area of Inq. 10);

- "Correspondence between Nalco and ***BP*** regarding the development, use, mixing, and release of Corexit during the Deepwater Horizon Oil Spill Clean-Up Efforts." (*Id.* at Area of Inq. 18);

- "All training information provided to ***BP*** for ***BP*** to use in training their employees or contractors." (*Id.* at Area of Inq. 22); and

- "Any and all limitations or restrictions imposed by the EPA regarding the use of Corexit during the Deepwater Horizon Oil Spill." (*Id.* at Area of Inq. 19);

On December 22, 2021, Nalco and ChampionX served objections and responses to the document requests in the Subpoena. These objections are incorporated herein. *See* Ex. G (Objs. & Resp. to Hung Nguyen's Subpoena). On January 3, 2022, ChampionX produced the published studies it had previously offered to produce. *See* Spellman Dec. at ¶ 7. ChampionX now moves the Court to quash the Subpoena, or in the alternative, enter a protective order, and stay the Rule 30(b)(6) deposition.

## II.   ARGUMENT

The Subpoena against ChampionX is unduly burdensome and should be quashed because (1) it seeks irrelevant information beyond the scope of a BELO case; (2) any relevant information requested by the Subpoena could be more easily obtained through the Defendants in the underlying case or other means; and (3) the Subpoena is overly broad. Alternatively, ChampionX is entitled to a protective order. The deposition should be stayed while the motion is pending.

  **A.** **This Court Should Grant Nalco's Motion To Quash**

    **1.** **Plaintiff's Subpoena is Unduly Burdensome**

Under Fed. R. Civ. P. 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden and expense on a person subject to a subpoena." Fed. R. Civ. P. 45(d)(1). Courts recognize that non-parties are "strangers" to a litigation and thus "concern for the unwarranted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) (granting motion to quash subpoena on non-party, stating that "non-parties have greater protections from discovery" and "burdens on non-parties will impact the proportionality analysis"). When a subpoena is issued to a non-party, courts consider "whether information should be obtained by direct discovery from a party, as opposed to from a non-party." *Medical Components Inc. v. Classic Med. Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002). Courts have held that a party's responsibility under Rule 45 has not been met when that party issues a subpoena to a non-party for information or materials that could be directly discovered from another party to the litigation. *See, e.g.*, *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *1–2 (W.D. Tex. July 15, 2015) ("[T]his Court is of the opinion that because the information at issue is available from [] a party to the litigation, any interest Plaintiffs have in obtaining said information from a non-party is far outweighed by the burden imposed.").

A court must quash or modify a subpoena that "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). When considering whether a subpoena poses an undue burden, courts apply a balancing test and consider several factors, including: (i) the person's status as a non-party; (ii) the relevance of the discovery sought; (iii) the subpoenaing party's need for the testimony; (iv) the breadth of the request; and (v) the burden imposed on the subpoenaed party.

7

*See, e.g.*, *In re O'Hare*, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012). Because ChampionX is a non-party, this Court "may also consider the expense and inconvenience to the non-party," including whether the requested information is available from any other source. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004); *see also*, *e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) ("Since Plaintiffs have not shown they attempted to obtain these documents from defendant, the Court finds that, at this time, requiring nonparty KSA to produce these documents is an undue burden on nonparty KSA."); *Cusumano*, 162 F.3d at 716 (upholding district court's order denying a motion to compel materials pursuant to Rule 45 subpoena because "the same information was otherwise available to Microsoft by direct discovery").

### a. Plaintiff's Subpoena Seeks Irrelevant Information

Plaintiff's Subpoena seeks deposition testimony and documents that are not relevant to his BELO claim and fall outside of the clearly delineated topics that can be litigated in a BELO suit. *See, e.g.*, *Terwillegar v. Offshore Energy Servs., Inc.*, Civ. A. No. 07-01376, 2008 WL 2277879, at *3 (E.D. La. May 29, 2008) ("[t]he Court further quashes Era's subpoenas to Rayne and Iberia Bank because they seek this irrelevant information"); *Peterson v. Sam's E., Inc.*, No. EP-07-CV-258-PRM, 2008 WL 11334108, at *1 (W.D. Tex. Jan. 15, 2008) (quashing subpoena which contained requests that were unlimited in scope and may have included irrelevant documents). Further, the requests seek information that is beyond the scope of permissible discovery under the MSA and are not reasonably calculated to lead to admissible evidence. *See* Ex. B, MSA § VIII(G)(5). Some of the requests relate to information Nalco may have had regarding dispersants generally and Corexit, as well as to Nalco's conduct. *See* disc. supra at 5; Ex. F (Areas of Inq. 1, 12-14, 16-17, 22; Document Requests 3-5, 9-10, 13-14). But Nalco and ChampionX are not defendants, nor can they be. *See* disc. *supra* at 5. Nalco's/ChampionX's

8

knowledge and conduct have nothing to do with the only issues permitted to be litigated in Plaintiff's case:

- the "fact of [Plaintiff's] diagnosis";
- the "amount and location" of oil, dispersants, and other substances;
- the "level and duration" of Plaintiff's exposure;
- whether the Plaintiff's alleged medical condition "was legally caused" by any exposure;
- whether any "alternative causes" exist for Plaintiff's alleged medical conditions; and
- the "amount, if any, of compensatory damages" to which the Plaintiff may be entitled.

*See* MSA § VIII(G)(3)(a)(iv)–(v).  Other topics, such as the identity of subcontractors that might have mixed Corexit, the identity of companies that might have transported Corexit and the quantity of Corexit purchased by the federal government are likewise irrelevant.  *See* Ex. F (Areas of Inq. 20-21, 23; Document Requests 8, 11).

Some of Plaintiff's topics seek information about safety guidelines in place for using dispersants during the Spill Response.  *See*, *e.g.*, Ex. F (Areas of Inq. 15, 22; Document Request 12-13).  Plaintiff might argue that these topics are relevant to his alleged exposure to oil, dispersants and other substances.  Plaintiff's *actual* level and duration of exposure to substances released from the Deepwater Horizon well or used during the Spill Response is one of the limited BELO issues.  But the information and testimony sought in these requests will not elicit information on Plaintiff's actual exposure as Plaintiff has not alleged any interactions with Nalco nor provided any reason to believe Nalco—which merely sold Corexit and did not determine whether, where, when, how or in what quantities it would be used—would have any information about Plaintiff's alleged employment as a clean-up worker, where Plaintiff worked or under what

9

circumstances he worked. Plaintiff himself would presumably have that information, as would entities and persons for whom and with whom Plaintiff worked during the Spill Response.

### b. Any Relevant Information Sought Can Be Obtained From Defendants

To the extent some narrow subset of the information sought might be deemed relevant to the limited, enumerated issues permitted to be litigated in Plaintiff's BELO case—such as the amount and location of oil, dispersants and other substances—that information can and should be obtained from Defendants or other sources. *See* Ex. F (Area of Inq. 11). Indeed, as emphasized by Judge Barbier in his opinion dismissing with prejudice the MDL claims against Nalco, "Nalco did not decide whether, when, where, how or in what quantities Corexit was applied in response to the Deepwater Horizon/Macondo Well oil spill." *See* Ex. A, *In re Oil Spill*, 2012 WL 5960192, at *9. Instead, the Federal On-Scene Commander ("FOSC") and members of the Unified Area Command—which included BP—evaluated tools used to respond to the Spill, including dispersants. *See id.* at *9. The FOSC ultimately authorized the use of Corexit, including when, where, how and in what quantities Corexit could be applied. *See id*. Thus information on where, when, how and in what quantities dispersants were applied, and on whether Plaintiff was exposed to dispersants, must be obtained from Defendants—or from the federal government, which oversaw the Spill Response. *See id.*; *see also* Ex. F (Areas of Inq. 2-3, 11, 15, 19).

Plaintiffs implicitly recognize that the burdensome information they seek from non-party ChampionX can in fact be obtained from Defendants. Indeed, at minimum sixteen out of the twenty-three Areas of Inquiry are already covered by Plaintiff's 30(b)(6) deposition notice to Defendants. *See* Ex. H (Hung Nguyen's Subpoena to BP); Ex. F (Areas of Inquiry 2-12, 18-21); Ex. I (Redline between Schedules A and B of Hung Nguyen's Subpoena on BP and Schedules A

10

and B of Hung Nguyen's Subpoena to ChampionX).[7] These overlapping Areas of Inquiry include, among others, the composition of Corexit, which, as Defendants have noted, has been the subject of prior deposition testimony and document productions. *See* Ex. J (BP's Objs. & Resp. to Hung Nguyen's Subpoena). Additionally, the subjects of Nalco's Rule 30(b)(6) deposition in the MDL encompass several of the Subpoena Areas of Inquiry, such as those related to the testing of Corexit, submissions for Corexit to be listed on the United States National Contingency Plan, and Nalco's communications with third-parties regarding the Spill Response. *See* Ex. E, ("Defendant Nalco Company's Response And Objections To Plaintiffs' Notice Of 30(b)(6) Deposition") at 2-4.

Plaintiff himself has apparently already recognized that the information he is seeking from ChampionX is available from Defendants. There is no justification for imposing on non-party ChampionX the substantial burden associated with responding to the Subpoena. *See, e.g.*, *Rembrandt Patent Innovations* 2015 WL 4393581, at *1–2 ("[T]his Court is of the opinion that because the information at issue is available from [] a party to the litigation, any interest Plaintiffs have in obtaining said information from a non-party is far outweighed by the burden imposed.").

### c. The Subpoena Is Overly Broad And Would Impose An Undue Burden On Non-Party Nalco

In addition to seeking irrelevant information, the Subpoena's Areas of Inquiry and Document Requests are overbroad and would impose an undue burden on ChampionX. *See*

---

[7] Some of the Areas of Inquiry differ only in that they are directed at BP's knowledge or opinion, versus Nalco's knowledge or opinion. *Compare*, *e.g.*, Ex. F (Areas of Inquiry 12-13) *with* Ex. H, (Areas of Inquiry 11-12). Of course, BP is the only entity that can be a defendant in Plaintiff's lawsuit; Nalco and ChampionX cannot. *See* Ex. A, MSA § VIII(A). Thus Nalco's/ChampionX's knowledge and opinion are irrelevant to Plaintiff's claims. *See id.*; *see also* disc. *supra* at 8.

11

*Texas Brine Co., LLC v. Dow Chem. Co.*, No. CV 15-1102, 2018 WL 950352, at *7 (E.D. La. Feb. 20, 2018) (granting motion to quash subpoena on non-party for "documents related to the siting, permitting, and/or drilling of solution mined well caverns" in connection with mining operations dispute when "beyond the publicly available information, the permitting/siting/drilling information sought by [Plaintiff] is of tangential relevance and minimal importance); *In re Guzman*, No. 2:16-CV-00303, 2017 WL 2210519, at *1 (W.D. Tex. May 19, 2017) (finding that subpoena was "facially overbroad" and imposed an "unreasonable burden on a non-party" to the underlying case).

     Given the breadth of the fourteen document requests and the more than nine years that have passed since Nalco was dismissed with prejudice from the MDL litigation, ChampionX would suffer business interruption and be required to devote significant time and resources searching for, gathering, organizing, reviewing and providing the requested documentation, which is not subject to a time period and thus potentially stretches back decades.[8]  *See* Spellman Dec. at ¶ 5; *see also In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012) (granting motion to quash document requests because they were "facially overbroad," requested documents not related to the action, and the "period covered by the requests [was] unlimited.").  Each document would also need to be reviewed for privilege and for information that is proprietary or otherwise confidential.  *See* Spellman Dec. at ¶ 5.  A designee would then have to take significant time away from his or her work, at least several full working days, to review the documents and prepare to testify about twenty-three broad topics, some of which potentially stretch back decades.  *See* Spellman Dec. at ¶ 6; *Hallamore Corp. v.*

---

[8] For example, Document Request 3 seeks studies conduct by or known by Nalco "at least two years," prior to the Spill Response, but not limited to two years before the Response.

12

*Capco Steel Corp.*, 259 F.R.D. 76, 81 (D. Del. 2009) (denying motion to compel response to deposition subpoena and stating: "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)." (citation omitted)).[9]  This burden is compounded by the fact that, more than nine years after Nalco was dismissed with prejudice from the MDL, Nalco's MDL Rule 30(b)(6) deponent is no longer with ChampionX (or Nalco), nor are others who would have had direct knowledge of the Areas of Inquiry.

In another BELO case in which a plaintiff served a subpoena on a third party, the Center for Toxicology & Environmental Health, for documents related to the Spill Response, the Court granted the third party's motion to quash on the grounds it was overbroad and the information sought was publicly available.  *See* Ex. K, *Kevin Hinton v. BP Exploration & Production Inc.*, Case No. 4:19-cv-02601 (S.D. Tex. June 2, 2020), Dkt. 31, ("Mot. to Quash Subpoena"); Ex. L, *id.* at Dkt. 38 ("Hearing Minutes & Order").  ChampionX respectfully requests that the Court do the same here, where the Subpoena is overbroad, the information sought is not relevant, and to the extent some narrow subset might be deemed relevant, it can be obtained from Defendants.

      **B.**      **Alternatively, If This Court Declines To Quash The Subpoena, It Should Enter A Protective Order**

Under Rule 26 of the Federal Rules of Civil Procedure, a court may, for good cause, enter a protective order to prevent annoyance, embarrassment, oppression, or undue burden.  *See* Fed. R. Civ. P. 26(c).  A party seeking a protective order must show good cause and a specific need for protection.  *See, e.g.*, *Huber v. Texas Woman's Univ.*, Civ. A. No. H-06-00303, 2006 WL 8446878, at *2 (S.D. Tex. June 16, 2006).  Good cause exists "when justice requires the

---

[9] For example, Area of Inquiry 2 seeks information on what dispersants are and how they are used in response to an oil spill, with no time limitation.

13

protection of 'a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* (quoting Fed. R. Civ. P. 26(c)). A protective order is particularly warranted here, where the information being sought is irrelevant to the BELO issues and therefore of minimal, if any, probative value. *See, e.g.*, *Madison v. Courtney*, No. 4:18-cv-00671-O, 2018 WL 10579557, at *3 (N.D. Tex. Aug. 17, 2018) (granting motion for protective order because there was "little probative value" in the discovery sought).

As set forth above, good cause to enter a protective order exists here because Plaintiff's deposition topics are irrelevant, overly broad and subject ChampionX to undue burden. *See id.*; *Hume v. Consol. Grain & Barge, Inc.*, No. CV 15-935, 2016 WL 7385699, at *4 (E.D. La. Dec. 21, 2016) (granting motion to quash and for a protective order because there was a "potential for significant burden" and expenses that would be incurred by third-party witness were substantial, in light of extremely broad discovery requests); *Huber*, 2006 WL 8446878, at *2 (granting motion for protective order and motion to quash because the subpoena was "much broader than the rules of federal procedure allow"). Further, because Plaintiff has numerous and less-burdensome other means to acquire the discovery sought from ChampionX, the hardship to ChampionX outweighs Plaintiff's need for the information. *See Madison*, 2018 WL 10579557, at *3; *see also supra* at 11-13.

### C. Motion to Stay Deposition

ChampionX hereby moves that the January 7, 2022 deposition be stayed or that ChampionX be excused from complying with the deposition notice while this motion is pending. *See* Fed. R. Civ. P. 37(d)(2) (a failure to attend a properly noticed deposition is grounds for sanctions, "unless the party failing to act has a pending motion for protective order under Rule 26(c)"); *see also MetroPCS*, 327 F.R.D. at 615 (quoting Rule 37(d) and finding that witness timely filed motion to quash and was excused from sanctions).

14

### III. CONCLUSION

WHEREFORE, for the reasons stated above, ChampionX respectfully requests that the Court quash the Subpoena or, in the alternative, enter a protective order, stay its January 7, 2022 Rule 30(b)(6) deposition pending resolution of this motion and provide such additional relief as the Court deems just.

DATED: January 5, 2022

Respectfully submitted,

/s/ *Kelsey L. Zottnick*

Kelsey L. Zottnick
State Bar No. 24102687
Mary Rose Alexander (*pro hac vice forthcoming*)
Johanna M. Spellman (*pro hac vice forthcoming*)
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
kelsey.zottnick@lw.com
mary.rose.alexander@lw.com
johanna.spellman@lw.com

*Attorneys for ChampionX, LLC*

15

## CERTIFICATE OF SERVICE

I, Kelsey L. Zottnick, an attorney, hereby certify that on January 5, 2022, I caused ChampionX LLC'S Motion to Quash or For a Protective Order and Motion to Stay Deposition to be filed with the Clerk of Court using the CM/ECF system, and a true and correct copy of the foregoing instrument was served on counsel for Petitioner by electronic mail on January 5, 2022 and via U.S. Mail, postage prepaid, on January 5, 2022:

C. David Durkee
ddurkee@downslawgroup.com
THE DOWNS LAW GROUP, P.A.
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
Telephone: (305) 444-8226


Dated: January 5, 2022

/s/ *Kelsey L. Zottnick*
Kelsey L. Zottnick